J-A09030-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRITTANY NICOLE ROBINSON | : | |
| | : | |
| Appellant | : | No. 981 WDA 2025 |

Appeal from the Judgment of Sentence Entered July 1, 2025
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0000024-2023

BEFORE:  NICHOLS, J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED: JULY 27, 2026**

Brittany Nicole Robinson appeals from the judgment of sentence imposed following her convictions for one count of persons not to possess a firearm, three counts of possession with intent to deliver ("PWID"), three counts of possession of a controlled substance, and one count of possession of drug paraphernalia.[1] Robinson challenges the court's denial of her motion to suppress, an evidentiary ruling, and the sufficiency of the evidence. We affirm.

The Commonwealth charged Robinson, along with her co-defendant, Djuan Williams, with various drug and firearm offenses. Following a preliminary hearing, she was held for court. Robinson filed an omnibus pre-trial motion to suppress the search warrant at issue and an omnibus pre-trial

---

[1] 18 Pa.C.S.A. § 6105(a)(1), 35 P.S. §§ 780-113(a)(30), (16), and (32), respectively.

habeas corpus petition. The trial court held a hearing on June 13, 2023 and summarized the facts as follows:

[T]he Commonwealth presented the testimony of Narcotics Agent Wes Biricocchi of the Pennsylvania Attorney General's Office and Officer Robert Haus of the City of Arnold Police.

[Agent] Biricocchi testified that on April 13, 2022, he utilized his GPS to proceed to Upper Drennen Road to facilitate or observe a controlled purchase of narcotics between his confidential source (hereinafter referred to as "CS") and . . . Djuan Williams (a.k.a. "Chiz"). The CS had previously arranged the purchase of two (2) ounces of crystal methamphetamine from Williams via text message. After the deal was arranged, and Williams responded that he was "ready," the CS called Williams on his cell phone via conference call (on a "bridge line") to obtain the deal location. [Agent] Biricocchi was present during the conference call and overheard the CS speaking with Williams. He was also able to view the text messages between the CS and Williams. Prior to proceeding to the deal location, the CS was shown two (2) photographs – one of Williams and the other of an unknown male. The CS identified Williams as the person he or she knew as "Chiz." Initially, Williams said that the deal location would be at Merwin Lane; however, he later changed it to Upper Drennen Road. [Agent] Biricocchi, Officer Haus, Officer Jerry Hobeck of the New Kensington Police Department, and the New Kensington K-9 unit proceeded to Upper Drennen Road using the GPS as a guide. [Agent] Biricocchi's unmarked vehicle was the first to arrive.

Upon arriving at the proposed deal location, [Agent] Biricocchi observed a black male in a red shirt standing by a mail[box] on which 419 Perry Lane was displayed. [Agent] Biricocchi explained that "419 Perry Lane was the same location in which 520 Upper Drennen Road was identified as in the GPS." Perry Lane was a private drive[way] that led to two (2) mobile homes – one occupied, the other abandoned. [Agent] Biricocchi identified the man in the red shirt as Djuan Williams. He tried to arrest Williams by activating his lights and sirens; however, Williams fled the scene. As they followed Williams to the abandoned mobile home, [Agent] Biricocchi and the other officers gave him multiple commands to stop. Williams did not comply. Instead, he entered the abandoned mobile home, ran to the bedroom, and closed the door. After multiple commands to come

out, Williams exited the bedroom and lay down on the floor in a prone position. He was placed under arrest and removed from the mobile home. In the floor, underneath where Williams had lain, the officers found an 8-inch hole. Inside the hole, they discovered a clear, plastic baggie containing 57 grams of crystal methamphetamine.

After exiting the abandoned residence, [Agent] Biricocchi made contact with Robinson, who was standing on the porch of the nearby occupied mobile home, wearing only underwear and [T]-shirt. The two (2) mobile homes on Perry Lane were located almost adjacent to one another. There was enough room between them "for a small car to fit sideways."

[Agent] Biricocchi knew Robinson from previous interactions. He spoke with her about the situation and advised her that Williams was being arrested for PWID. Robinson advised that neither she nor Williams lived at 419 Perry Lane and that it belonged to her recently deceased father. He asked Robinson if he could search the residence. She refused and told him to get a search warrant. [Agent] Biricocchi prevented Robinson from going inside the mobile home for fear that she might destroy contraband. He prepared an Application for a Search Warrant for the occupied mobile home, which was granted by Magisterial District Judge Frank Pallone at approximately 7:20 p.m. [Agent] Biricocchi noted on the Affidavit of Probable Cause his training, education, and experience regarding illicit drugs, packaging and concealment methods utilized by drug dealers, and the specifics of the controlled buy on April 13, 2022[. The Affidavit stated:

> As a result of my training and experience, your Affiant has extensive knowledge regarding illegal drugs, packaging, and concealment methods, the coded language utilized by drug traffickers, as well as the methods utilized by illegal drug traffickers in the sale and distribution of controlled substances. Your Affiant is familiar with tactics used by narcotic traffickers to elude the efforts of law enforcement while participating in the sale, delivery and acquisition by misrepresentation of illegal and scheduled drugs. Your Affiant is also aware that narcotic traffickers utilize safes and . . . boxes to conceal and hide their illegal narcotics and drug proceeds.]

> On April 13, 2022, Agents of the PA Office of Attorney General BNI worked in conjunction with the Westmoreland

County Drug Task Force to conduct a buy/bust operation in the Upper Burrell Twp area of Westmoreland County. Agents/Officers worked with a confidential source (CS) to make arrangements to purchase two (2) ounces of crystal methamphetamine from a male knows [sic.] to them as "Chiz." The CS positively identified "Chiz["] as Djuan Williams by a photograph. The CI [sic.] contacted Williams via text message asking for the two (2) ounces of crystal meth. Williams told the CS "I'm ready." The CS then contacted Williams to set a deal location. Williams instructed the CS to go to Merwin Road off Rt[.] 366. At approximately 17:40 hours, Williams contacted the CS via phone call and stated go to 520 Upper Drennen Road and he would be waiting outside.

Agents/Officers proceeded to the area of 520 Upper Drennen Rd. Your Affiant observed Djuan Williams AKA Chiz standing at the mailbox getting the mail for 419 Perry [Ln] (a private driveway) dressed in a red T-shirt, sweatpants and house slippers. Agents/Officers wearing full POLICE marking[s] and a marked police vehicle approached Williams. Agents advised Williams to stop and show his hands as an emergency siren was activated. Williams immediately fled on foot up Perry Lane to an abandoned mobile home. Williams entered the door to this abandoned residence and continued to flee to the back bedroom closing the door. Williams then exited and surrendered. Agents/Officers conducted a safety sweep of the rear bedroom and located a baggie of crystal methamphetamine (approx. 2 ounces).

As Agents/Officers exited the residence contact was made with Brittany Robinson at 419 Perry Lane asking what was going on. Brittany Robinson stated Williams was just with her and did not know why he was under arrest. Robinson[,] who was dressed in only a T-shirt and underwear[,] stated she did not stay at or own the residence but it was her late father's. Robinson refused consent to search the residence for additional narcotics after being advised why Agents/Officers had just arrested Williams.

[Through your Affiant's training and experience as well as the above stated incident avers there to be additional quantities of crystal methamphetamine being concealed within 419 Perry Lane. Your Affiant knows through

- 4 -

numerous drug investigations that drug dealers do not carry their full supply of narcotics on their person when making a delivery and it is common to keep the larger quantity of their product stored within a residence to avoid being arrested with their full supply.]

After the search warrant was granted, [Agent] Biricocchi returned to 419 Perry Lane and conducted a search. During direct examination, [Agent] Biricocchi stated:

I returned to 419 Perry Lane at approximately 19:30 hours. A search of that residence was conducted. I located a backpack in the bathroom which contained[,] later found to be[,] $15,000 of US currency. In the main master bedroom, bedroom one, a baggie of crack cocaine approximately 6.3 grams; a baggie of crystal methamphetamine approximately 9.2 grams; a bag of suspected fentanyl pills approximately 6.3 grams; 10 packets of suspected fentanyl stamped Passion under that bed in bedroom one; a digital scale in bedroom one under the bed; a box of nine-millimeter ammunition in the kitchen; a Glock 17 nine-millimeter serial number BDLG 641. It was inside the oven in the kitchen. The firearm was later reported stolen through NCIC.

During cross-examination, the following exchange took place:

BY [DEFENSE COUNSEL]:

Q. So you testified that there was a backpack located in one of the bedrooms in this trailer, and it was on top of the bed? Is that correct?

A. I called it bedroom one. It's essentially the living room area of the trailer. You walk through the front door, and that generalized area was turned into a bedroom. There was one bed. There was no couch so we called it bedroom one.

Q. Was there a bedroom two?

A. There was a rear bedroom past – it would have been on if you had walked in the front door to the left the whole way back.

Q. And what was located in this backpack?

A. Just paperwork.

Q. Just paperwork inside the backpack?

A. Yes, sir.

Q. And so I believe you mentioned, like there was a folder so you're saying there was – the only thing inside [the] backpack was a folder and paperwork?

A. There was an accordion-style divider. It had multiple paperwork, multiple indicia for both Robinson and Williams. I don't recall what else was in there.

[Agent] Biricocchi specifically identified the items of indicia found in the backpack. There was a letter addressed to Djuan Williams at 7136 Lemington Ave., Pittsburgh, from the United States Postal Service dated December 5, 2021. It was explained that the Postal Service could not forward his mail to 339 Boulevard of the Allies, Pittsburgh. There was also an envelope addressed to Djuan Williams at 339 Boulevard of the Allies. There was an envelope from Marquette Savings Bank addressed to Djuan Williams at 339 Boulevard of the Allies. Finally, there was a Probationary License Petition for Brittany Robinson at 1603 Kimball Ave., Arnold, Pennsylvania. The agent identified men's and women's clothing and food in the kitchen as indicators that someone was living in the residence.

[Agent] Biricocchi stated that both [Robinson and Williams] are prohibited by law from possessing firearms. No drugs, large amounts of currency or cell phones were found on Williams when he was arrested. Based upon his training and experience as a narcotics agent, [Agent] Biricocchi believed that the items found in the residence were consistent with a distribution operation as opposed to personal use.

City of Arnold Police Officer Robert Haus was the next to testify . . . He generally corroborated [Agent] Biricocchi's testimony.

Trial Court Opinion and Order, filed 12/27/23, at 5-9 (citations omitted).

The court denied both suppression and habeas corpus, and Robinson proceeded to a jury trial. At trial, Agent Biricocchi testified consistently with his testimony at the suppression hearing. Additionally, the following took place at the trial:

Testimony was presented that as the search was being conducted, investigators looked for evidence, such as clothing, documents such as bills, or anything with a person's name on it so as to link them to the residence. [Agent] Biricocchi testified that there were a limited amount of both men's and women's clothing and men's hats in the residence. The clothing and men's hats were found in what was described as the living room/main bedroom area of the trailer. This room was located immediately upon entry to the trailer and was labeled as "bedroom one." Also found in that room were several documents, such as mail and envelopes, and a driver's license application, with [Robinson's and Williams's] names thereon. The trailer was described as having an open floor plan with the kitchen area to the right upon entry, and the living room area, with a bed therein, a small hallway, a bathroom on the right and secondary bedroom at the end of the hall.

A timely objection was made by defense counsel for Robinson, joined in by counsel for Williams, as the Commonwealth sought to admit photographs of [the] documents found within the living room/bedroom area of the trailer and which contained the names of either Djuan Williams or Brittany Robinson. Counsel for both [Robinson and Williams] argued that admission of the photographs violated the best evidence rule, Pa. R.E. 1002, and that only the original documents/mail with these names and addresses were admissible as evidence. Following argument by counsel at sidebar, and a short recess to consider the issue, the [c]ourt overruled the objection, concluding that the photographs were "duplicates" and therefore admissible pursuant to Pa. R.E. 1003.

Rule 1925(a) Opinion, filed 9/25/25, at 3-4 (citations to notes of testimony omitted).

At the conclusion of the trial, a jury convicted Robinson of the above offenses. She was sentenced to five to 10 years' incarceration. This appeal followed.

Robinson raises the following issues:

1. Whether the Court of Common Pleas erred in denying [Robinson's] Omnibus Pretrial Motion to Suppress when the Affidavit of Probable Cause appended to the Search Warrant in this matter lacked probable cause and was therefore facially deficient?

2. Whether the Court of Common Pleas erred in overruling [Robinson's] Omnibus Pretrial Motion - Petition for Writ of Habeas Corpus when the Commonwealth failed to establish a *prima facie* case of possession of contraband by [Robinson] in this matter, including by way of constructive possession?

3. Whether the Court of Common Pleas erred in overruling [Robinson's] objection at trial to the Commonwealth's use of photographic evidence depicting only portions of various documents, despite the same being available to the Commonwealth during the course of the investigation?

4. Whether the Court of Common Pleas erred by denying [Robinson's] motion for judg[ment] of acquittal at the conclusion of trial because the verdict reached in this matter was against the sufficiency of the evidence presented by the Commonwealth?

Robinson's Br. at 5-6 (suggested answers omitted).

The heading of the first section of Robinson's argument signals that that section is intended to address her first two issues. **See** Robinson's Br. at 20; **but see** Pa.R.A.P. 2119(a) (requiring argument to be divided into as many sections as there are questions to be argued). However, the first section of the argument is limited to a discussion of only the first issue – the denial of Robinson's motion to suppress. Robinson does not develop an argument regarding her second issue – the denial of her petition for writ of habeas corpus. That issue is therefore waived. **See** Pa.R.A.P. 2119(a); **Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa.Super. 2007) (explaining

"it is an appellant's duty to present arguments that are sufficiently developed for our review" and failure to do so may deem "certain issues waived"). In any event, the guilty verdict rendered the habeas claim moot. *See **Commonwealth v. Lee**, 662 A.2d 645, 650 (Pa. 1995) (stating that the "adjudication of guilt renders moot any allegation that the Commonwealth failed to establish a *prima facie* case" at the preliminary hearing). To the extent that Robinson argues that the Commonwealth failed to prove that she constructively possessed the contraband, we address that claim in her final issue.

Regarding suppression, Robinson argues the Commonwealth failed to establish probable cause in support of the search warrant for 419 Perry Lane. Robinson's Br. at 22. She maintains that there was no substantial nexus established between the criminal activity alleged of Williams, her co-defendant, and the 419 Perry Lane residence. *Id.* Robinson points out that "[n]o information provided within the affidavit in support of the warrant application supports 'a fair probability that evidence of a crime or contraband w[ould] be found in' 419 Perry Lane." *Id.* (quoting **Commonwealth v. Nicholson**, 262 A.3d 1276, 1280 (Pa.Super. 2021)). In Robinson's view, "insufficient information was contained within the affidavit to even support a search warrant for 520 Upper Drennen Road, the only address known to the police, let alone [her] deceased father's former residence." *Id.* She notes that the affidavit does not connect her to the asserted criminal activity "aside from her statement that she had been with [Williams] earlier in that day." *Id.* at

24. She further highlights that there is no information in the search warrant that established that she or Williams were ever inside of the 419 Perry Lane residence. *Id.* Robinson concludes the court erred denying her pre-trial motion and the evidence should have been suppressed. *Id.* at 25.

On appeal from an order denying a motion to suppress, our review is "limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Ochoa*, 304 A.3d 390, 396 (Pa.Super. 2023) (citation omitted). We "consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the suppression record as a whole." *Id.* (citation omitted).

This Court is "highly deferential to the suppression court's factual findings and credibility determination[s]." *Commonwealth v. Carmenates*, 266 A.3d 1117, 1123 (Pa.Super. 2021) (*en banc*). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." *Id.* (citation omitted). If there is support in the record for the suppression court's findings, we may not substitute our own findings. *Commonwealth v. Batista*, 219 A.3d 1199, 1206 (Pa.Super. 2019). We review the suppression court's legal conclusions *de novo*. *Id.*

The Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution protect against unreasonable searches and seizures. Except where an exception applies, "a search is constitutionally invalid unless it is conducted pursuant to a warrant issued by a neutral and detached magistrate and supported by probable cause." **Commonwealth v. Lyons**, 79 A.3d 1053, 1063-64 (Pa. 2013). "[T]he totality of the circumstances set forth in the affidavit [of probable cause] must be considered when examining whether probable cause supports the issuance of the search warrant." **Commonwealth v. Harlan**, 208 A.3d 497, 505 (Pa.Super. 2019) (internal quotation marks omitted). "[P]robable cause is based on a finding of the probability, not a *prima facie* showing, of criminal activity, and deference is to be accorded a magistrate's finding of probable cause." **Commonwealth v. Arthur**, 62 A.3d 424, 432 (Pa.Super. 2013) (citation and brackets omitted; italics added). We limit our review to the four corners of the affidavit. **Id.** "[S]earch warrants should be read in a common sense fashion and should not be invalidated by hypertechnical interpretations." **Commonwealth v. Kane**, 210 A.3d 324, 332 (Pa.Super. 2019) (citation and internal quotation marks omitted).

"[P]robable cause to believe that a man has committed a crime on the street does not necessarily give rise to probable cause to search his home." **Nicholson**, 262 A.3d at 1280 (citation omitted, emphasis removed). Rather, "[t]he affidavit of probable cause must establish a 'substantial nexus' between the suspect's home and the criminal activity or contraband sought to permit

the search of the home." *Id.* In determining whether to grant a warrant application, a magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Commonwealth v. Ani*, 293 A.3d 704, 716 (Pa.Super. 2023) (citation omitted). When a reviewing court examines an order granting a warrant, it only decides whether "a substantial basis existed for the magistrate to find probable cause." *Commonwealth v. Johnson*, 42 A.3d 1017, 1031 (Pa. 2012).

Here, the affidavit of probable cause provided a substantial nexus between the crime and the 419 Perry Lane residence. The application for the search warrant set forth the place to be searched as a "mobile home trailer" located at "419 Perry Lane, New Kensington, 15086." The affidavit of probable cause set forth the following: A CS made arrangements with "Chiz," who was identified by the CS in a photograph as Williams, to purchase two ounces of crystal methamphetamine. Williams directed the CS to go to 520 Upper Drennen Road where he would be waiting outside. When the investigators went to that address, they observed Williams standing at the mailbox getting the mail for 419 Perry Lane, which is a private driveway. Williams was dressed in a red T-shirt, sweatpants, and house slippers. Upon seeing marked police vehicles, Williams fled on foot up Perry Road to an abandoned home. Williams was found with approximately 2 ounces of crystal methamphetamine, which was the same amount of drugs agreed upon for the controlled buy. Upon

exiting the abandoned residence, the investigators saw Robinson at 419 Perry Lane dressed in a T-shirt and underwear. Robinson told the investigators that Williams "was just with her." She denied that she lived at the residence and refused consent to search it. Based on his training and experience, the affiant believed that there were additional quantities of crystal methamphetamine being concealed at 419 Perry Lane because drug dealers do not carry their full supply of drugs on their person when making a delivery and it is common to keep the larger quantity of their supply within a residence. Based on the foregoing, there was "a fair probability that contraband or evidence of a crime" would be found at 419 Perry Lane. *Ani*, 293 A.3d at 716. Therefore, there was sufficient probable cause to support the search warrant.

Robinson next argues the court erred in overruling her objection at trial to the Commonwealth's "use of photographic evidence depicting only portions of various documents/mail, despite the same being available to the Commonwealth during the course of the investigation and because they were not complete 'duplicates.'" Robinson's Br. at 18. Robinson maintains the photographs violated the best evidence rule under Pennsylvania Rule of Evidence 1002, and that only the original documents with Robinson's and Williams's names and addresses were admissible as evidence. *Id.* at 26. She points out that Agent Biricocchi testified that he took the photographs as "indicia" and did not seize the items. *Id.* at 32. Robinson argues that the photographs "were not an exact copy of the original documents, but were merely a portion of the document itself, which conveniently contained the

purported names and addresses of the addressees on the various documents/mail that the police found within 419 Perry Lane and in close proximity to the contraband seized by police." ***Id.*** She concludes that this evidence should not have been admitted at trial. ***Id.*** at 33.

Our standard of review for evidentiary issues is well-settled:

> The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. Thus[,] our standard of review is very narrow. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

***Commonwealth v. Lopez***, 57 A.3d 74, 81 (Pa.Super. 2012) (citation omitted). An abuse of discretion "is not merely an error in judgment, but an overriding misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of the record." ***Commonwealth v. Talbert***, 129 A.3d 536, 539 (Pa.Super. 2015) (citation omitted).

The best evidence rule provides "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules, other rules prescribed by the Supreme Court, or a statute provides otherwise." Pa.R.E. 1002. "The best evidence rule requires that an original or duplicate of a writing must generally be introduced to prove the content of a writing that is closely related to a controlling issue in the case." ***Commonwealth v. Fischer***, 329 A.3d 1257, 1261 (Pa.Super. 2024). A "duplicate" is defined as

"a copy produced by a mechanical, photographic, chemical, electronic, or other equivalent process or technique that accurately reproduces the original." Pa.R.E. 1001(e). "A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Pa.R.E. 1003. The comment to Rule 1003 explains, in relevant part:

> Under the traditional best evidence rule, copies of documents were not routinely admissible. This view dated back to the time when copies were made by hand copying and were therefore subject to inaccuracy. On the other hand, Pennsylvania courts have admitted copies made by techniques that are more likely to produce accurate copies. For example, when a writing is produced in duplicate or multiplicate each of the copies is treated as admissible for purposes of the best evidence rule.
>
> ***
>
> The extension of similar treatment to all accurate copies seems justified in light of modern practice . . . As a result, Pa.R.E. 1003 should tend to eliminate purely technical objections and unnecessary delay. In those cases where the opposing party raises a genuine question as to authenticity or the fairness of using a duplicate, the trial court may require the production of the original under this rule.

Pa.R.E. 1003, cmt.

Here, the court found that the photographs were duplicates and observed that Robinson did not raise any genuine question regarding the authenticity of the documents when objecting to the admissibility of the photographs of the documents in question. *See* Rule 1925(a) Op. at 11. It therefore overruled Robinson's objection.

A review of the record supports the court's ruling. Agent Biricocchi testified that he took a photograph of a probationary license petition that he found in the backpack. This document was an exact copy of the probationary license petition, contained Robinson's name and address on it, and was found in close proximity to the contraband. The purpose of introducing the document was to show indicia that Robinson stayed at 419 Perry Lane. Robinson did not object to the authenticity of the photograph or argue that it inaccurately reproduced the original. *See* N.T. Trial, 4/8/25, at 83-95. Accordingly, the court properly overruled the objection.

Lastly, Robinson argues that the evidence was insufficient to sustain her convictions because the Commonwealth failed to prove she constructively possessed the firearm, controlled substances, and drug paraphernalia. Robinson's Br. at 38. She points out that the only alleged indicia linking her to the firearm and contraband was female clothing and her probationary license petition. *Id.* at 41. Robinson asserts that "even considering [that she] stated the trailer belonged to her deceased [f]ather, . . . the Commonwealth has not satisfied its burden of proving circumstantially that [she] constructively possessed the drugs and scale" and "failed to establish that [she] had 'conscious dominion' over the firearm and other contraband." *Id.*

The sufficiency of the evidence is a question of law. Therefore, "[o]ur standard of review is *de novo*, and our scope of review is plenary." *Commonwealth v. Mikitiuk*, 213 A.3d 290, 300 (Pa.Super. 2019). When reviewing a challenge to the sufficiency of the evidence, we "must determine

whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt." **Commonwealth v. Feliciano**, 67 A.3d 19, 23 (Pa.Super. 2013) (*en banc*) (citation omitted). "Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail." **Id.** (citation omitted). This standard applies equally where the Commonwealth's evidence is circumstantial. **Commonwealth v. Patterson**, 180 A.3d 1217, 1229 (Pa.Super. 2018). This Court "may not substitute our judgment for that of the factfinder." **Commonwealth v. Griffith**, 305 A.3d 573, 576 (Pa.Super. 2023). The factfinder, "while passing on the credibility of the witnesses and the weight of the evidence[,] is free to believe all, part, or none of the evidence." **Commonwealth v. Miller**, 172 A.3d 632, 640 (Pa.Super. 2017).

All of Robinson's offenses require possession as an element. Possession can be established "by proving actual possession, constructive possession, or joint constructive possession." **Commonwealth v. Parrish**, 191 A.3d 31, 36 (Pa.Super. 2018) (citation omitted). "Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction." **Id.** Constructive possession exists where the defendant has "the power to control the contraband and the intent to exercise that control." **Commonwealth v. Hopkins**, 67 A.3d 817, 820 (Pa.Super. 2013) (citation omitted). "Constructive

possession is an inference arising from a set of facts that possession of the contraband was more likely than not." ***Commonwealth v. McClellan***, 178 A.3d 874, 878 (Pa.Super. 2018).

The Commonwealth may prove constructive possession by the totality of the circumstances. ***Hopkins***, 67 A.3d at 820. "[A] defendant's mere presence at a place where contraband is found or secreted is insufficient, standing alone, to prove that he exercised dominion and control over those items." ***Parrish***, 191 A.3d at 37. "Rather, knowledge of the existence and location of the contraband is a necessary prerequisite to proving the defendant's intent to control, and, thus, his constructive possession." ***Id.*** "[T]wo actors may have joint control and equal access and thus both may constructively possess the contraband." ***Commonwealth v. Jones***, 874 A.2d 108, 121 (Pa.Super. 2005) (citation omitted).

Here, the court found the Commonwealth presented sufficient evidence that Robinson constructively possessed the firearm and contraband. ***See*** Rule 1925(a) Op. at 16-17. Based on our review of the record and viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we find no error in the court's conclusion. Agent Biricocchi testified that after leaving the abandoned trailer where Williams was hiding, he observed Robinson exit the trailer next door, at 419 Perry Lane, and stand on the front porch. N.T., 4/8/25, at 61. He noted that there were only two trailers there and it was "a very secluded, very rural area." ***Id.*** at 48, 51. He stated that Robinson inquired about what was going on with Williams while standing on

the porch. *Id.* at 62. Agent Biricocchi testified that Robinson was wearing only a T-shirt and underwear. *Id.* He said that Robinson refused consent to search the trailer and requested to go into the trailer to retrieve pants to put on. *Id.* at 63. After obtaining a search warrant, Agent Biricocchi found personal paperwork with Robinson's name on it, as well as male and female clothing. *Id.* at 65, 96, 101. These items were found in close proximity to where the narcotics and digital scale were located. *Id.* at 96, 104-105. The firearm and ammunition were located in the kitchen and $15,000 in banded currency was located under the sink in the bathroom. *Id.* at 81, 116. Based on the totality of the circumstances, we agree with the trial court that the evidence was sufficient to establish that Robinson constructively jointly possessed the firearm and contraband.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 7/27/2026